## Frances Muse *v.* Harry L. Page, Jr.

Maltbie, C. J., Hinman, Avery, Brown and Jennings, Js.

Argued January 6—decided February 7, 1939.

*Alfonse C. Fasano,* with whom was *Armen K. Krikorian,* for the appellant (plaintiff).

*Vincent P. Dooley,* with whom, on the brief, was *Isadore Chaplowe,* for the appellee (defendant).

BROWN, J.   The court's finding, with such correc-tions as the plaintiff is entitled to, contains these ma-terial facts.   Elm Street, running east and west, and College Street, running north and south, are main pub-lic highways which intersect near the business center of New Haven.   At a point twenty-eight feet west of the intersection, Elm Street is forty-four feet and eight inches between curb lines.   Elm Street is paved with asphalt except for some patches of granite blocks near the trolley tracks.   The crosswalk on Elm Street is not marked but the west sidewalk of College Street is fourteen feet wide.   Traffic in the intersection is controlled by an automatic traffic light suspended over the center thereof, which changes to red, yellow, and green.

The plaintiff is sixty-five years old, blind in her left eye, and with poor vision in her right eye improved by glasses.   Between 10 and 11 o'clock on the fore-noon of June 14, 1937, she walked easterly on the north sidewalk of Elm Street to a point about four-teen feet from the westerly edge of the west sidewalk of College Street.   There she stopped, observed that the traffic light was in her favor, looked to each side for any approaching traffic and saw none.   There were no cars moving on Elm Street at the time.   She then left the curb to cross Elm Street and did not again look to her left, but continued on some eight or ten

steps when she came in contact at a point just back of its cab or near the middle, with the right side of the defendant's truck as it proceeded westerly, and fell over backward and slightly to her right. On falling her right foot and lower leg went under the truck, and its right rear wheel crushed this leg between the knee and ankle. It was raining hard at the time with a southwest wind blowing and the plaintiff was carrying an umbrella to protect her from the rain. She was wearing her glasses. The plaintiff at no time before the accident saw the truck and did not know what struck her. She was picked up at a point approximately twenty-eight feet west of the westerly curb of College Street and nineteen feet from the northerly curb of Elm Street.

The defendant is twenty-three years of age and was operating a new 1937 Chevrolet truck eighteen feet long weighing five thousand pounds plus a six hundred pounds load, with a body which extended ten to twelve inches beyond the sides of the cab and about five inches beyond the tires, and with hydraulic brakes in good condition. He drove it southerly on College Street, approaching Elm Street at about twenty miles an hour, straddling the most westerly rail of the double trolley tracks. As he neared the intersection he slowed down to between five and ten miles an hour, shifted into second speed, and seeing the traffic light in his favor, made a wide right turn into Elm Street. His windshield wiper was working and there was nothing but the rain to interfere with his vision to the right. After turning into Elm Street, when about at the crosswalk, his truck was straddling the most northerly rail of the double trolley tracks. He gave no signal or warning either as he approached the intersection or made the turn, and did not see the plaintiff until after she had come in contact with

the truck and was upon the ground. After he had proceeded about twenty-five feet from the crosswalk, still in second speed at between five and ten miles per hour, he felt a bump, heard a scream, and stopped the truck. It is impossible to establish the time it took the defendant to stop his truck after hearing the scream, but it was almost instantly, though not before the right rear wheel struck the plaintiff's right leg which it did not pass over but pinned to the ground. When stopped, the truck was parallel with the curb of Elm Street. The plaintiff was at no time in front of the truck, nor did she come in contact with any portion of the front of it. She was not dragged or propelled forward to any appreciable extent by the contact. At the speed it was going an ordinary glance would have revealed the truck to her in time for her in the use of ordinary care to have stopped and avoided it. She sustained severe injuries including fractures of the right tibia and fibula, and a laceration on the inside of the right thigh. The court concluded that the defendant was negligent, but that the plaintiff was guilty of contributory negligence, and rendered judgment for the defendant.

The plaintiff contends that even upon the uncorrected finding the court erred in concluding that she was guilty of contributory negligence. She points out that her look both ways at the curb revealed no traffic in Elm Street and the traffic light in her favor, that the defendant's truck had not yet come into view, and that it was incumbent upon her to look out ahead, to her right, and also to where she was walking in proceeding across. Her claim is that in view of this the court, by holding her negligent in failing to look to her left in time to discover and avoid the approaching truck, imposed a higher duty of care than the law prescribed. Reasonable care under all the circum-

stances is the test. *Russell* v. *Vergason,* 95 Conn. 431, 436, 111 Atl. 625. While the standard of care to be used is an external standard, taking no account of the personal equation of the man concerned, yet the amount of care required depends upon the circumstances of the particular case, and if a person suffers from a physical disability increasing the risk of harm to him, that is among the circumstances to be considered. Thus reasonable care in the case of one with such defective vision as the plaintiff had, is such care as an ordinarily prudent person with a like infirmity would exercise under the same or similar circumstances. *Ham* v. *Lewiston,* 94 Me. 265, 268, 47 Atl. 548; *Kerr* v. *Connecticut Co.,* 107 Conn. 304, 308, 140 Atl. 75; 45 C. J. 996, § 549; 20 R. C. L. 114, § 99. Ordinarily a conclusion of freedom from contributory negligence is one of fact. It is only when the conduct under investigation is so plainly and palpably like that of a reasonably prudent man that it can be held as a matter of law not to constitute contributory negligence. *Skovronski* v. *Genovese,* 124 Conn. 482, 483, 484, 200 Atl. 575. Applying this test to the plaintiff's conduct as found by the court, we cannot say that it erred in concluding that she was contributorily negligent.

The plaintiff's fundamental contention, however, is that the finding should be corrected to state that the impact between her and the truck occurred within the limits of the crosswalk, instead of some fourteen feet further west on Elm Street. With the finding so changed it is her claim that since, under the provision of § 395(b) of the General Statutes that "a pedestrian started or starting across any such [marked or unmarked] crosswalk on a green or 'Go' signal shall have the right of way over all vehicles, including those making turns, until such pedestrian shall have reached the opposite curb or safety zone," she would have the

right of way over the defendant, the court's conclusion that she was contributorily negligent was erroneous as a matter of law. Whether such a result would ensue we do not determine, being satisfied that the correction in the finding should not be made. The plaintiff argues, in the first place, that the finding "after the defendant had proceeded about twenty-five feet from the crosswalk, he felt a bump" which was the contact with the plaintiff, is so inconsistent with the further fact found that the plaintiff when struck, though not propelled forward to any appreciable extent, afterward lay with her leg pinned under the rear wheel "about twenty-eight feet" from the westerly curb line of College Street extended, that this essential finding fixing the point of impact outside of the crosswalk cannot stand. As is apparent from the words above quoted, the distances found were not explicit, but approximate only. In this they reflect the testimony, for exactness in the statement of distances by witnesses who have made no actual measurements is not to be expected. Her argument is vitiated by her mistaken assumption that these distances were exact and precise when they were not. There is no material inconsistency between these two parts of the finding and the plaintiff's claim is without merit.

While the plaintiff does not dispute that after the truck had stopped she lay with her leg pinned under its rear wheel twenty-eight feet west of the corner, her principal argument is that with the truck proceeding at between five and ten miles per hour at the impact, the court's finding to the effect that it was stopped with its right rear wheel at approximately the point where this occurred, is so contrary to indisputable physical facts that it cannot be sustained. The defendant testified that he stopped the truck within one

or two feet after he felt the impact, while another witness said it was stopped "immediately" and another "instantly." Furthermore, ample evidence supports the court's finding that the plaintiff contacted the truck near its middle, and that she was not dragged, and its finding that the truck stopped with its right rear wheel on her leg is not attacked. No evidence was offered as to the time and distance required to stop such a truck under like conditions. It is elaborately argued in the plaintiff's brief, however, that the court was bound to take judicial notice that the truck could only be stopped after the time required to cover stated intervals for "thinking time," for the actual application of the brakes, and for their operative effect, had elapsed, and that therefore it was impossible for the defendant to have stopped it within less than eighteen feet of the place of the impact, which was consequently within the crosswalk. The plaintiff cites no authority to support this contention, and we find none which can sustain it.

While "courts take judicial notice of such things as are of common knowledge" (*Roden* v. *Connecticut Co.,* 113 Conn. 408, 415, 155 Atl. 721), and when properly resorted to judicial notice "takes the place of proof, and as a means of establishing facts it is superior to evidence" (*Schmidt* v. *Manchester,* 92 Conn. 551, 554, 103 Atl. 654), the principle is not available to establish the stopping distance of an automobile with the precision and exactitude claimed by the plaintiff here. As the court said in *McCombs* v. *Fellis,* 337 Mo. 491, 498, 85 S. W. (2d) 135: "While courts may not take judicial notice of the precise distance a given automobile may be stopped under given conditions, judicial notice has been taken of the limits within which a stop could be effected. Thus, as is stated in Chief

Justice Wheeler's dissenting opinion in *Kotler* v. *Lalley*, 112 Conn. 86, 98, 151 Atl. 433: "Judicial notice cannot be taken of the shortest distance the defendant's car traveling at twenty-five miles an hour could be stopped in, but . . . may be taken that this car could have been stopped in at least seventy-five feet." Similarly, it is within judicial notice that a trolley car proceeding at a speed of eight to ten miles an hour, by the use of air brakes can be stopped in a shorter distance than one hundred and twenty feet. *Swayne* v. *Connecticut Co.*, 86 Conn. 439, 449, 85 Atl. 634. A like limitation in the application of the principle is indicated in the decisions of other jurisdictions. Thus, in *Davis* v. *Schroeder*, 291 Fed. 47, 51, the court recognized judicial notice as establishing no more than the fact that an automobile proceeding at ten miles per hour can be stopped "within a very short space"; in *Wright* v. *Chicago, R. I. & P. R. Co.*, 222 Iowa 583, 268 N. W. 915, at twenty-five "in . . . less . . . than one hundred feet"; in *Clark* v. *Jones*, 91 Ore. 455, 461, 179 Pac. 272, at five or six, or even ten "within a very few feet"; in *Linton* v. *Virginia E. & P. Co.*, 162 Va. 711, 730, 174 S. E. 667, at fifteen or twenty "in a very short distance"; and in *Weitzman* v. *Bissell Lumber Co.*, 193 Wis. 561, 569, 214 N. W. 353, at twenty-eight "at a much less distance than eighty-five feet." Other cases of similar purport are cited in 5 Berry, Automobiles, 480, § 5.307, and in 9 Blashfield, Automobile Law and Practice, 282, § 6023. The court's finding complained of was warranted by the evidence and there are no indisputable physical facts to the contrary which require its correction. The same is true of its finding that the plaintiff came into contact with the right side of the truck near its middle, and that its sides were parallel with the curb at the time of the

contact, which are also assigned as error by the plaintiff.

There is no error.

In this opinion the other judges concurred.